**SELECTED RISKS INSURANCE COMPANY, Appellant,**

v.

**BRUNO, Anthony V. and Bruno, Lucy C., his wife, and Bruno, Jr., Anthony, Appellees.**

**No. 83–3031.**

United States Court of Appeals, Third Circuit.

Argued Aug. 4, 1983.

Decided Sept. 27, 1983.

. Ralph E. Kates, III (argued), Brian P. Dempsey, Harry V. Cardoni, Griffith, Aponick & Musto, Wilkes-Barre, Pa., for appellant.

John Barry Beemer (argued), Beemer, Rinaldi, Fendrick & Mellody, P.C., Scranton, Pa., for appellees.

Before GIBBONS, HUNTER, Circuit Judges, and MANSMANN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Selected Risks Insurance Company ("Selected Risks") issued a homeowner's insurance policy, effective June 29, 1978 to June 29, 1979, to Anthony V. Bruno and his wife, Lucy Bruno (the "Brunos"). The policy provided bodily injury liability coverage in the amount of Fifty Thousand Dollars ($50,-000) and medical payment coverage in the amount of One Thousand Dollars ($1,000). Anthony Bruno, Jr. ("Bruno Jr."), the Brunos' son, was not a named insured on the policy. He was nevertheless an insured because he was a resident of his parents' household.

On June 20, 1979, Bruno Jr. and Joseph Whah exchanged heated words at the Robo Car Wash, approximately one block from the Brunos' home. Bruno Jr. struck Whah, watched him fall to the ground, and left. Whah died on November 5, 1979 as a result of his injuries. Bruno Jr. was subsequently convicted of the crime of simple assault in the Lackawanna County Court of Common Pleas. The executrix of Whah's estate brought a state court action against Bruno, Jr., seeking monetary damages for Whah's death.

On August 25, 1981, Selected Risks brought this diversity action seeking a declaratory judgment that it was not required to defend or afford coverage to the Brunos

* Honorable Carol Los Mansmann, United States District Judge for the Western District of Pennsylvania, sitting by designation.

in the state wrongful death action. Selected Risks moved for summary judgment, relying on the undisputed fact that Bruno Jr. had been found guilty of simple assault. Selected Risks argued that damages resulting from this intentional assault were not covered because the insurance policy contained the following exclusionary clause:

> "1. *Coverage E—Personal Liability and Coverage F—Medical Payments to others* do not apply to *bodily injury* or *property damage:*
>
> a) which is expected or intended by the *insured....*" (emphasis in original)

The Brunos admitted that there were no issues of material fact, but submitted a signed affidavit attesting that they were unaware of the exclusion and that Selected Risks had never explained it to them. They asserted that the Pennsylvania rule established in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974), prevented Selected Risks from relying on that exclusion. In *Hionis,* the Pennsylvania Superior Court held that an insurer cannot rely on an exclusion unless it shows that the insured was aware of the exclusion and that the exclusion's effect had been explained to him. *Id.* at 517, 327 A.2d at 365.

Selected Risks argued that the *Hionis* rule did not apply because Bruno, Jr. was not a named insured, but a "fortuitous" or "additional" insured. Selected Risks asserted that an insurer has no duty under *Hionis* to explain exclusions to household members other than the named insured, and that an "additional insured" cannot benefit from the *Hionis* rule even if the named insured was not advised of the exclusions.

The United States District Court for the Middle District of Pennsylvania held that the *Hionis* rule requires an insurer to prove that the named insured was aware of and knew the effect of an exclusion irrespective of whether the named insured or an additional insured is actually seeking coverage. Because Selected Risks did not controvert the Brunos' claim that the named insureds were unaware of the exclusion, the district court granted summary judgment to the Brunos. *See Selected Risks Insurance Co. v. Bruno,* 555 F.Supp. 590 (M.D.Pa.1982).

On appeal, Selected Risks argues that the rationale underlying the *Hionis* rule is inapplicable in this case because it is unreasonable as a matter of law for an insured to expect that a homeowner's insurance policy will provide liability coverage for intentional criminal acts that result in personal injury. This argument was not proffered in the trial court. Initially, therefore, we must determine whether we will hear this argument.

■ It is the general rule that a federal appellate court does not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This rule is one of discretion rather than jurisdiction,[1] and in the past we have heard issues not raised in the district court when prompted by exceptional circumstances. *See, e.g., Abrams v. U.S. Department of the Navy,* 714 F.2d 1219, (3d Cir.1983); *Princeton Community Phone Book, Inc. v. Bate,* 582 F.2d 706 (3d Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978); *O'Neill v. United States,* 411 F.2d 139 (3d Cir.1969).

■ This case presents such exceptional circumstances. The *Hionis* decision expresses important Pennsylvania public policies.[2] By virtue of its effect on insurance

---

1. *See, e.g., Rogers v. Larson,* 563 F.2d 617, 620 n. 4 (3d Cir.1977) (rule may be relaxed whenever the public interest so warrants), *appeal dismissed sub nom Larsen v. Lockhart,* 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978); *Franki Foundation v. Alger-Rau Assoc.,* 513 F.2d 581, 586 (3d Cir.1975) (same).

2. Holding that insurance policies are "contracts of adhesion," *Eastcoast Equipment Co. v. Maryland Casualty Co.,* 38 Pa.D. & C.2d 499,

511 n. 10 (1965), *aff'd* 207 Pa.Super. 383, 218 A.2d 91 (1966) (adopting the opinion of the trial court) Pennsylvania courts have uniformly held that the public policy of the Commonwealth requires disputed policy provisions to be construed strictly against the insurance company. *See, e.g., Frisch v. State Farm,* 218 Pa.Super. 211, 275 A.2d 849 (1971); *Evans v. Baltimore Life Ins. Co.,* 216 Pa.Super. 425, 268 A.2d 155 (1970); *Simon v. Hospital Service Ass'n,* 192

contracts, the *Hionis* rule affects every inhabitant of Pennsylvania and the insurance companies that serve them. Its proper application is therefore critical. Subsequent to the district court's decision, the Superior Court of Pennsylvania clarified the *Hionis* rule in a manner highly relevant to this case. *See McDonald v. Keystone Insurance Co.,* —— Pa.Super. ——, 459 A.2d 1292 (1983) (in banc). The *McDonald* decision explicitly requires that the reasonableness of the insured's expectations be considered in applying the *Hionis* rule. Because neither the parties nor the district court had the benefit of the clarifying *McDonald* decision, and because it is vital to apply these important public policies correctly, we will consider Selected Risks' argument that the rationale underlying the *Hionis* rule is inapplicable in this case.

■ Selected Risks argues that the policies underlying the *Hionis* rule would not be served by its application to this case. It contends that *Hionis* seeks to protect only reasonable expectations, and that it is unreasonable as a matter of law for an insured to expect that a homeowner's insurance policy will provide liability coverage for intentional criminal acts. We agree.

The Brunos do not allege that they purchased the homeowner's policy expecting to be covered for liability resulting from off-premises intentional criminal acts. Nor do they allege that appellant misled them to believe that they could get such coverage. Rather they rely solely on their interpretation of *Hionis* as an inflexible rule requiring the insurance company to explain *all* exclusions to them.

Such a rigid application of the *Hionis* rule is not contemplated by *Hionis* itself or its progeny. The Pennsylvania Superior Court has explained that the major premise upon which *Hionis* is based is that insurance contracts are contracts of adhesion in which the purchaser has no power to affect the terms. *Klischer v. Nationwide Life Insurance Co.,* 281 Pa.Super. 292, 299, 422 A.2d 175, 178 (1980). A second concern is that insurance contracts should not be governed by the maxim of *caveat emptor,* but that the insured should be able to make an informed decision either to assume the excluded risks or to obtain additional insurance to protect against them. *Id.* Where these policies would not be served by the application of the *Hionis* rule, both this court and Pennsylvania courts have refused to apply the rule. Thus, where the parties were of equal bargaining power and the policy disfavoring contracts of adhesion would not have been served by application of the rule, this court refused to apply it. *See Brokers Title Co. v. St. Paul Fire & Marine Insurance Co.,* 610 F.2d 1174 (3d Cir.1979). And where the facts indicated that the insured should have known of a policy exclusion, and application of the *Hionis* rule therefore would not have furthered the policy of enabling insureds to make informed decisions, the Pennsylvania Superior Court refused to apply the rule. *See Miller v. Prudential Insurance Co.,* 239 Pa.Super. 467, 362 A.2d 1017 (1976).

Similarly, we hold that none of the policies underlying the *Hionis* rule would be served by protecting the insured's patently unreasonable expectations.[3] The *Hionis*

Pa.Super. 68, 159 A.2d 52 (1960). As the district court in this case recognized, the *Hionis* rule is another expression of this public policy. *See Selected Risks Ins. Co. v. Bruno,* 555 F.Supp. 590, 594 (M.D.Pa.1982).

**3.** It should be noted that *Hionis* was not decided by the highest court of Pennsylvania, nor has that court ever addressed the *Hionis* rule.

In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta

or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. [citation omitted] The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and works of scholarly commentators.
*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981). *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

rule is based on a policy disfavoring contracts of adhesion. As Professor Keeton has pointed out, the purpose of judicial regulation of contracts of adhesion in the insurance law context is to protect the "*objectively reasonable expectations* of applicants and intended beneficiaries. . . . " Keeton, *Insurance Law Rights At Variance With Policy Provisions,* 83 Harv.L.Rev. 961, 967 (1970) (emphasis added). Only objectively reasonable expectations are protected because such a standard provides "an essential degree of certainty and predictability about legal rights, as well as a method of achieving equity not only between insurer and insured but also among different insureds whose contributions through premiums create the funds that are tapped to pay judgments against insurers." *Id.* at 968. The Pennsylvania Supreme Court appears to agree with Professor Keeton. In considering the policy against contracts of adhesion, it has emphasized that "the *reasonable* expectation of the insured is the focal point" of insurance transactions such as these. *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 594, 388 A.2d 1346, 1353 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979) (emphasis added).

This reasonableness requirement is not merely implied by the policies supporting the *Hionis* rule, but is now an explicit part of Pennsylvania law. In *McDonald v. Keystone Insurance Co.,* —— Pa.Super. ——, 459 A.2d 1292 (1983) (in banc), the Pennsylvania Superior Court closely examined the reasonableness of the involved insured's expectations. Concluding that they were unreasonable, the court refused to apply the *Hionis* rule.[4] In the opinion, written by the author of *Hionis,* the court explained the *Hionis* rule:

Our courts have held that if an insurance policy contains *unusual* provisions that might defeat the *reasonable* expectations of the insured, the insurer has a duty at the time of application to volunteer information explaining the insured's rights.

*Id.* at ——, 459 A.2d at 1294 (emphasis added). *McDonald* thus makes clear that only unusual provisions will trigger application of the *Hionis* rule, and then only if they defeat reasonable expectations.

An exclusion for intentionally caused injuries is not unusual, nor could an insured reasonably expect that a basic homeowner's policy would provide coverage for intentional criminal acts, particularly those committed away from the home. Indeed, such an expectation would be patently unreasonable. Presented with a similar factual situation, the Court of Common Pleas in *Kitzmiller v. Harleysville Mutual Insurance Co.,* 14 Pa.D. & C.3d 553 (1979), held that "any expectation that the [homeowner's] policy provided protection against the pecuniary consequences of assaults was and is unreasonable as a matter of law." *Id.* at 559.

We believe that the Pennsylvania Supreme Court would hold that the *Hionis* rule does not apply to clearly unreasonable expectations of the insured. We also believe that it would agree with us and the *Kitzmiller* court that it is unreasonable as a matter of law for an insured to expect that a homeowner's insurance policy will provide liability coverage for intentional criminal acts. Therefore, we will reverse the judgment of the court below, and remand the case for further proceedings consistent with this opinion.

4. The insured requested "full and complete" coverage. The agent sold her a policy containing uninsured motorist benefits of $15,000. He did not explain the circumstances in which the insurer would not pay "uninsured" motorist benefits, or that the insured could obtain greater coverage through an "underinsured" motorist plan. When the insured was injured, sustaining losses in an amount greater than the other driver's policy limit of $15,000, she attempted to collect the difference from her own insurance company, arguing that the other driver was uninsured as to the difference. She also contended that the insurer was estopped from denying her coverage because it had failed to explain the policy limitations to her. Holding that an expectation of receiving up to $15,000 from her insurance company when she was fully compensated (to the limits of her own policy) by the other driver's insurance was unreasonable, the court refused to apply the *Hionis* rule. *See McDonald v. Keystone Insurance Co.,* —— Pa.Super. ——, 459 A.2d 1292 (1983) (in banc).