Neil LANG and Linda Lang, Plaintiffs,

v.

NEW YORK LIFE INSURANCE
COMPANY, a New York
corporation, Defendant.

Civ. No. 82–1834.

United States District Court,
D. New Jersey.

Dec. 15, 1982.

William J. Lang, Pompton Plains, N.J.,
for plaintiffs.

Kraft & Hughes by Mark F. Hughes, Jr.,
Newark, N.J., for defendant.

MEMORANDUM

BIUNNO, Senior District Judge.

This is a suit on an insurance policy providing coverage of $100,000. on the life of plaintiffs' child, and an additional $100,000. as an accidental death benefit. Both sides have moved for summary judgment in respect to the accidental death benefit, as the basic payment was satisfied.

Jurisdiction here rests on diversity only, and so the principles of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) govern.

The choice of law is by the rules of the forum State, and there can be no doubt that in the field of insurance law, New Jersey would apply its own law to this policy, issued to New Jersey holders on a New Jersey life, since compliance with New Jersey regulatory law is required. See, also, *Lamb v. Connecticut General etc.*, 509 F.Supp. 560 (D.N.J.1980), *aff'd.*, 643 F.2d 108 (CA 3, 1981), especially the discussion in Appendix A, at p. 576, reviewing the State law perspective in this field, especially in light of the McCarran Act, 15 U.S.C. § 1011 et seq.

The various New Jersey statutes presented to the court make it obvious that under New Jersey law a carrier may write the sort of insurance involved here either to provide coverage when death "results" from an accident, or where death is caused by "accidental means". Most of the argument on the motion involves this dichotomy.

The "accidental means" view is said to have been laid down in *U.S. Mutual Accident, etc. v. Barry*, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889). That case was one begun in the Wisconsin courts and removed to federal court on diversity grounds, and was decided in the days of *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 which was overruled by *Erie*.

Even the *Landress v. Phoenix etc.* case, 291 U.S. 491, 498, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934), in which Justice Cardozo

dissented, was decided before *Erie* and so is of little value other than historical.

Defendant presses the view that the very language of the policy has been construed to be an "accidental means" coverage, not an "accidental result" coverage, relying on a decision of the D.C. Circuit. But since *Erie* governs, the decision there, while of interest, does not control.

The New Jersey pattern is confused. The most recent history is in *Gottfried v. Prudential, etc.,* 173 N.J.Super. 381, 414 A.2d 551 (App.1979), *rev'd,* 82 N.J. 478, 414 A.2d 545 (1980). There had been a written opinion at the trial level reported in 173 N.J.Super. 370 (Law, 1977). The majority of the Appellate Division panel affirmed on the basis of that opinion and added decisions from Massachusetts, Florida and the District of Columbia. Judge Kole dissented, claiming that dictum in *Linden Motor Freight v. Travelers,* 40 N.J. 511, 193 A.2d 217 (1963) implies a recognition of an "accidental results" coverage even though *Linden's* decision was to adopt the rule of *Barry.*

In reversing, the Supreme Court issued a single sentence:

"The judgment is reversed substantially for the reasons expressed in the dissenting opinion of Judge Kole in the Appellate Division, reported at 173 N.J.Super. 389 [414 A.2d 551] (1979)".

From this brief sentence 8 "headnotes" are generated, but of course these are editorial matter, not part of the opinion. Also, only 5 justices participated and only 3 of those remain on the court. The status is at least Delphic, especially since the judgment in the Law Division was *after trial,* and Judge Kole's dissent called for the entry of judgment for plaintiffs.[1]

However, the uncertainty about the state of the law in New Jersey need not be resolved here. Any attempt to do so would apply only to this case, even if affirmed by the Court of Appeals, because decisions in diversity cases do not bind State Courts which are free to decide their own law.

■ It need not be resolved because on the facts not in genuine dispute, the death falls within the policy exclusion that the accidental death benefit is not payable if the insured's death "is contributed to or caused by 1. any disease or infirmity of mind or body * * * ".

The child had to be taken to a hospital where an inguinal hernia was found and repaired. Not observed by the doctors, either before or during surgery, was a hidden aperture in the abdominal wall, an insufficient bonding between the innermost layers of the abdominal wall, and an interparietal hernia, all within a half inch of the inguinal hernia. It is also clear that the plaintiffs claim death to have been the result of an incarceration, or strangulation, of the child's intestine when trapped in the portion not observed and repaired.

Thus, even if it be assumed that the policy is an "accidental result" policy, there can be no question that the death was contributed to or caused by the infirmity of the body in which the intestine was trapped and strangulated.

Much of plaintiffs' argument and material presented gives the impression that the case is a malpractice suit against the physicians or nurses, rather than a suit on a life policy. Whatever the coverage, the accidental death benefit is not insurance for professional liability based on malpractice.

Any other outcome would require flatly ignoring the explicit policy language and would make a different contract. No matter how strictly the exclusion be construed against the carrier, on the claimed facts of this case there is no escape from the exclusion.

Submit judgment against plaintiffs and in favor of defendant.

---

1. Not only was the trial court's decision after trial, but Judge Kole's dissent invoked the authority of the Appellate Division to exercise original jurisdiction and made findings of fact, see

N.J. Const.1947, Art. 6, sec. 5, par. 3, and N.J. Court Rule R. 2:10–5; 173 N.J.Super. at 392 (dissenting opinion).